**FEE PAID**

**F I L E D**
CLERK, U.S. DISTRICT COURT

JULY 13 2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____RS_____ DEPUTY

Anoush Hakimi (SBN 228858)
anoush@handslawgroup.com
Peter Shahriari (SBN 237074)
peter@handslawgroup.com
**THE LAW OFFICE OF HAKIMI & SHAHRIARI**
1800 Vine Street
Los Angeles, CA 90028
Telephone: (888) 635-2250
Facsimile: (213) 402-2170

Attorneys for Plaintiff-Relator,
**RELATOR LLC**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>          Plaintiff,<br><br>*ex rel.* **RELATOR LLC**, a California limited liability company,<br><br>          Relator,<br><br>     v.<br><br>**JAMES PUTELLA**, an individual, **MENTOR APPRENTICE SCHOOL OF THE ARTS, INC.**, a California corporation; **PAYITFORWARD MANAGEMENT, INC.**, a California corporation; **RECORDING RADIO FILM CONNECTION, INC.**, a California corporation; and  DOES 1-10,<br><br>          Defendants. | Case No. **2:22-CV-04780-JLS-ASx**<br><br>**COMPLAINT FOR VIOLATIONS OF FEDERAL FALSE CLAIMS ACT**<br><br>**FILED *IN CAMERA* UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**<br><br><u>**DO NOT PLACE ON PACER**</u><br><br>**JURY TRIAL DEMANDED** |

Plaintiff RELATOR LLC (hereinafter referred to as "Plaintiff") complains of

**JAMES PUTELLA**, an individual (the "Individual Defendant"), **MENTOR**

**APPRENTICE SCHOOL OF THE ARTS, INC.**, a California corporation ("Corp

1"); **PAYITFORWARD MANAGEMENT, INC.**, a California corporation

("Corp 2"); **RECORDING RADIO FILM CONNECTION, INC.**, a California

corporation ("Corp 3", together with Corp 1 and Corp 2, collectively, the

"Corporate Defendants"); and DOES 1-10 (together with the Corporate Defendants

and the Individual Defendant, collectively, the "Defendants"), and alleges as

follows:

## I.     INTRODUCTION

1.     This is a case about greed, fraud on the government, embezzlement

and misappropriation of emergency funds, during a national health crises. In this

case, James Putella, an individual, a businessman (through several entities he

wholly owned and controlled) applied for and received multiple PPP loans in the

total amount of **$805,821.00**, purportedly to cover payroll costs for his workers,

however the reported number of employees in the applications was false, multiple

loans were received for the payroll of the *same* employees through various separate

entities and the money was misappropriated for unauthorized purposes.

2.     The Corporate Defendants are the entities established by the Individual

Defendant for the very same business, his entertainment management business,

however, he exploited the appearance of separate corporate forms of these entities to double and triple dip for the very same employees, most which did not even exist. Defendant essentially ripped off a government aid program, needed by working families to survive.

3.     The money was borrowed for employees that did not actually exist. The millions in embezzled funds should have been returned. Not a penny has been returned.

4.     The Corporate Defendants share a common ownership and management, and in fact are different in name only.

5.     The PPP prohibited more than one (1) loan per company in the first round of the program, therefore as part of a scheme to circumvent that restriction the Individual Defendant applied for loans through the multiple Corporate Defendants, even though there is no real distinction among the business of the defendants because it is the same people working in the same company.

6.     The Defendants made many, material, false statements to the government to obtain these large loans and did it for an impermissible purpose.

7.     Defendants communicated in writing, deceptive statements, including without limitation, with respect to the necessity of the loan proceeds, the number of employees, the calculation of the loan amount, the purpose of the loan, and the use of the proceeds, among others.

8.      Plaintiff-Relator, Relator LLC on behalf of the United States of America brings this action to recover treble damages, civil penalties, and costs under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33, and to recover damages and other monetary relief under the common law and equitable theories of unjust enrichment and payment by mistake.

9.      This action arises from numerous false statements and claims that the Defendant knowingly presented to the United States and the United States Small Business Administration ("SBA") and lenders acting on the SBA's behalf, in violation of the FCA and common law.

10.     The Defendants unlawfully obtained millions of dollars of PPP Proceeds (as defined below), and failed to return or repay the money.

11.     In summary, the Individual Defendant used the Corporate Defendants to obtain a large PPP loan from the government. He deceptively completed the SBA loan applications by seeking money for employees of the Corporate Defendants when none actually existed.

## II.     THE PARTIES

12.     Plaintiff-Relator LLC, is a California limited liability company with its principal place of business in Los Angeles, California.

13.     Defendant James Petulla ("Individual Defendant") is an individual and, at all relevant times herein, is and was the sole owner and the President of each of the Corporate Defendants.

14.     Defendant Mentor Apprentice School of the Arts., is a California professional corporation ("Corp 1") with its principal place of business at 6300 Wilshire Blvd., Suite 640, Los Angeles, California 90048. Astonishingly, the entity was suspended by the California Secretary of State on October 1, 2013 and has been suspended ever since, including at the time that it applied for and received PPP Loan 1 (defined below).

15.     Defendant PayitForward Management, Inc., is a California corporation ("Corp 2") with its principal place of business at 6300 Wilshire Blvd., Suite 640, Los Angeles, California 90048.

16.     Defendant Recording Radio Film Connection, Inc., is a California corporation ("Corp 3") with its principal place of business at 6300 Wilshire Blvd., Suite 640, Los Angeles, California 90048.

17.     The loans obtained by Defendant follow a pattern. The Corporate Defendants each claim to have 50 employees for their operations, whereas, such employees did not in fact exist. Each of the loans was requested from a different lender in order to conceal this deception. The pattern makes it evident there is one planner orchestrating all these loans.

18.     During round 1 of the paycheck protection program, Corp 1 applied for a PPP loan for **$400,196.00**. It was approved on April 30, 2020 by the SBA for the full amount, which was disbursed. The loan was facilitated by Bank Of

America, National Association. Corp 1 received 100% of the approved amount, and the loan was forgiven by the SBA on April 29, 2021. On its application for this loan, Corp 1 stated that it had 50 employees. Said loan hereafter referred to as "PPP Loan 1."

19.    During round 2 of the paycheck protection program, Corp 2 applied for a PPP loan for **$384,655.00**. It was approved on February 24, 2021 by the SBA for the full amount, which was disbursed. This time, the loan was facilitated by Clearpath Federal Credit Union. Corp 2 received 100% of the approved amount. On its application for this loan, Corp 2 stated that it had, again, 50 employees. That "50" figure is reported again. Said loan hereafter referred to as "PPP Loan 2."

20.    During round 1 of the paycheck protection program, Corp 3 applied for a PPP loan for **$20,970.00**. It was approved on May 1, 2020 by the SBA for the full amount, which was disbursed. This time the loan was facilitated by Wells Fargo Bank, National Association. Corp 3 received 100% of the approved amount, and the loan was forgiven on July 15, 2021. On its application for this loan, Corp 3 again stated that it had, again, 50 employees. That "50" figure is reported yet again. Said loan hereafter referred to as "PPP Loan 3."

### III.    The CARES Act and Paycheck Protection Program

21.    On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act" or "the Act") (Pub. L. 116-136) became law and provided emergency assistance and health care response for individuals, families,

COMPLAINT

and businesses affected by the coronavirus pandemic. SBA received funding and authority through the Act to modify existing loan programs and establish a new loan program to assist small businesses nationwide adversely impacted by the COVID-19 emergency.

22.    The CARES Act authorized loans to eligible small businesses struggling to pay employees and other business expenses as a result of the devastating effect of the COVID-19 pandemic.

23.    Section 1102 of the CARES Act temporarily permitted the SBA to guarantee 100 percent of 7(a) loans under a new program titled the "Paycheck Protection Program" ("PPP").

24.    On April 24, 2020, the Paycheck Protection Program and Health Care Enhancement Act (Pub. L. 116-139) became law and provided additional funding and authority for the PPP. On June 5, 2020, the Paycheck Protection Program Flexibility Act of 2020 (Flexibility Act) (Pub. L. 116-142) became law and changed key provisions of the Paycheck Protection Program, including provisions relating to the maturity of PPP loans, the deferral of PPP loan payments, and the forgiveness of PPP loans.

25.    Under the PPP, in 2020, eligible businesses could obtain one SBA guaranteed PPP loan. Businesses were required to spend loan proceeds for employee compensation, rent or mortgage, and other specified expenses and,

depending on their use of the loan proceeds, could qualify for loan forgiveness, up to the full amount of the loan.

26.     The SBA delegated authority to third-party lenders to underwrite and approve the PPP loans. In order to obtain a PPP loan, a qualifying business (through its authorized representative) signed and submitted a PPP loan application (SBA Form 2483) online through the lender's application platform. The PPP loan application (SBA Form 2483) required the business (through its authorized representative) to acknowledge the PPP program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.

27.     Once the Borrower submitted its PPP loan application (SBA Form 2483) to a Lender, the participating lender processed the PPP loan application. If a PPP loan application (SBA Form 2483) was approved by the participating lender, it thereafter funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.

28.     After the Lender processed and approved a borrower's PPP loan application (Form 2483), but prior to the closing of the PPP loan, the Lender submitted to the SBA, the Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) to the SBA applying for a guarantee on the loan. For a PPP loan to be approved, the Lender was required to Answer Yes to the following questions in the Lender's Application - Paycheck Protection Program

Loan Guaranty (SBA Form 2484) as to the Borrower's certification of its General

Eligibility to receive a PPP Loan:

| | | ☐ Yes | ☐ No |
|---|---|---|---|
| • | The Applicant has certified to the Lender that (1) it was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099MISC; (2) current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant; (3) the funds will be used to retain workers and maintain payroll, or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures; and (4) the Applicant has not and will not receive another loan under the Paycheck Protection Program, section 7(a)(36) of the Small Business Act (15 U.S.C. 636(a)(36)) (this does not include Paycheck Protection Program second draw loans, section 7(a)(37) of the Small Business Act (15 U.S.C. 636(a)(37)). | | |

SBA Form 2484 (emphasis added). Therefore, if a PPP borrower lied on its

PPP loan application (SBA Form 2483), the PPP borrower's false certification

caused the Lender to submit to the SBA with respect to that PPP Loan, a Lender's

Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) that

contained the PPP borrower's False Statement.

29.    SBA Form 2483 provides the following certification, among others  "I

have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them" (hereafter the "Understanding Certification").

30.    SBA Form 2483 provides the following certification, among others "The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule)" (hereafter the "Eligibility Certification").

31.    SBA Form 2483 provides the following certification, among others "All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule" (hereafter the "Use of Proceeds Certification")

32.    SBA Form 2483 additionally provides the following certification, among others: "Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant" (hereafter the "Economic Necessity Certification").

33.    SBA Form 2483 additionally provides the following certification, among others: "The funds will be used to retain workers and maintain payroll or

make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud" (hereafter the "Worker Retention and Payroll Certification.")

34.    SBA Form 2483 additionally provides the following certification, among others: "During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program." (hereafter the "Single Loan Certification.")

35.    SBA Form 2483 additionally provides the following certification, among others: "I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000" (hereafter the "No False Statements Certification").

COMPLAINT

36.    After the borrower submitted the PPP loan application, that application was then processed by a participating lender. If a PPP loan application was approved, the participating lender funded the loan using its own monies, which were then guaranteed by the SBA. Generally, in the event that the borrower defaulted on a PPP loan, the SBA would purchase the borrower's debt from the lending financial institution and take on the responsibility for paying back the loan.

37.    Under the applicable PPP rules and guidance, recipients of PPP loans could apply to have the interest and principal on the PPP loan fully forgiven, meaning that the borrower would owe nothing and would have no obligation to repay the PPP loan. To obtain full forgiveness of the PPP loan, borrowers had to attest that they had "not reduced the number of employees or the average paid hours of [their] employees" during the loan period, that the loan proceeds had been spent on payroll costs and other permitted expenses and that at least 60% of the loan proceeds had been spent on payroll costs (hereafter the "Loan Forgiveness Certification").

38.    Loans could only be used for certain permitted expenses, such as to fund payroll costs and employee benefits, such as health insurance, to pay for, mortgage interest, rent, utilities or worker protection costs related to COVID19.

### IV.    Defendants' False Statements and Misuse of Proceeds

39.    Defendants applied for and received the PPP Loans in the total amount of **$805,821.00**. In order to receive the loans, Defendants would have to have

12

COMPLAINT

completed SBA Form 2483 entitled "Borrower Application Form". In doing so, Defendants intentionally made materially false statements with respect to the Eligibility Certification, the Use of Proceeds Certification, the Economic Necessity Certification, the Worker Retention and Payroll Certification, the No False Statements Certification and the Single Loan Certification.

40.    PPP Loan 1 and PPP Loan 3 have been forgiven, thereby Defendants applied for forgiveness with respect to these PPP Loans, and therefore Defendants would have to have made the Loan Forgiveness Certification.

41.    Defendants signed the loan applications, thereby endorsing the Understanding Certification, which means that they agreed that they understood the rules and guidelines of the PPP, including, without limitation the rules regarding use of proceeds and the certifications made.

42.    The proceeds of the PPP Loan were not and could not have been used only for business-related purposes consistent with the Paycheck Protection Program Rule, because, among other things, the Corporate Defendants did not have the stated number of employees at the times the loans were disbursed, therefore when Defendants made the Use of Proceeds Certification, the certification was false.

43.    The proceeds of the PPP Loans were not necessary to support the ongoing operations of Corporate Defendants. Therefore, when Defendants made the Economic Necessity Certification, the certification was false.

44.     The proceeds of the PPP Loan were not used to retain workers and maintain payroll, and therefore when Defendants made the Worker Retention and Payroll Certification, the certification was false.

45.     One or more of the Corporate Defendants were not actual operating businesses when the Corporate Defendants applied for the PPP Loans, and therefore when Defendants made the Eligibility Certification, the certification was false.

46.     One or more of the Corporate Defendants were not actual, separate businesses, but just shell entities exploited for purposes of the PPP program, and therefore when Defendants made the Single Loan Certification, the certification was false.

47.     Defendants could not have spent 60% of the amounts received on payroll because the stated number of employees on their loan applications did not exist, therefore when Defendants made the Loan Forgiveness Certification, the certification was false.

48.     On their loan applications, Defendants intentionally made several key statements which were false and intended to deceive. These key false statements by Defendant made it possible for them to get the loans.

49.     By virtue of the above false statements, when Defendants made the No False Statements Certification, that certification was false.

## V.     THE FALSE CLAIMS ACT

50.     Plaintiff alleges that, from at least April 30, 2020 through the time of

14

COMPLAINT

the filing of this Complaint, Defendants violated the FCA by "knowingly" submitting and/or causing the submission of false claims for payment to lenders authorized by the SBA to process PPP loan applications in the form of PPP Applications and the resulting receipt and failure to return PPP loans. These claims for payment were false because Defendants: (1) made knowingly false statements and certifications in their PPP applications, and in certifications accompanying its receipt of federal PPP funds, that it was complying with, and would continue to comply with, applicable laws and regulations governing the award of PPP loans; and/or (2) made, or caused to be made, false representations in loan applications that the Corporate Defendants were eligible to receive such PPP loans. Moreover, Defendants' false claims caused on numerous occasions each of Bank of America, National Association, Clearpath Federal Credit Union and Wells Fargo Bank, national Association to submit to the SBA, a Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) that contained Defendants' false statement concerning Defendants' general eligibility for the PPP loans, on which the SBA relied and paid to the lenders.

   51.    The False Claims Act prohibits fraudulent conduct in connection with federal programs, including the knowing submission of false claims for payment to the government. See 31 U.S.C. § 3729(a)(1)(A). In these circumstances, liability may attach if the omission renders those representations misleading. 41. 31 U.S.C. § 3729(a)(1)(A) and (B) of the FCA provide that:

      (1) . . . any person who—

      (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]

      (B) knowingly makes, uses, or causes to be made or used, a false

record or statement material to a false or fraudulent claim,

. . .

(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government, is liable to the United States Government . . .

31 U.S.C. § 3729(a)(1)(A), (B), and (G) (2020).

42. The scope of a false or fraudulent claim is to be broadly construed. As used in the FCA, a "claim"

(A) means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that—

(i) is presented to an officer, employee, or agent of the United States; or

(ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government—

(I) provides or has provided any portion of the money or property requested or demanded; or

(II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded; . . .

31 U.S.C. § 3729(b)(2) (2020).

52. A person who violates the False Claims Act during the time period at issue "is liable for a civil penalty as adjusted, plus 3 times the amount of damages

which the United States Government sustains because of the act of that person." 31 U.S.C. § 3729(a). See 28 C.F.R. § 85.3(a)(9); Department of Justice, 28 CFR Part 85, Civil Monetary Penalties Inflation Adjustments for 2022 published at: https://www.govinfo.gov/content/pkg/FR-2022-05-09/pdf/2022-09928.pdf.

## VI.    JURISDICTION & VENUE

53.    This Court has subject matter jurisdiction over the Plaintiff's claims brought under the FCA, 31 U.S.C. §§ 3279, et seq., pursuant to 31 U.S.C. §§ 3730 and 3732. This Court has supplemental jurisdiction to entertain the common law and equitable causes of action under 28 U.S.C. § 1367(a).

54.    This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because at all times material hereto, Defendants transacted business and are found in the Central District of California, and acts proscribed by 31 U.S.C. § 3729 occurred in this district.

55.    Venue is proper in this district pursuant to 31 U.S.C. § 3732(a), and under 28 U.S.C. §§ 1391(b) and 1395(a), because the Corporate Defendants are headquartered in Los Angeles County, within the Central District of California. Moreover, the Individual Defendant resides and does business in Los Angeles County within the Central District of California. Furthermore, acts that form the basis of this Complaint occurred in the Central District of California.

56.    Relator's claims and this Complaint are not based upon prior public disclosures of allegations or transactions in a federal criminal, civil, or

COMPLAINT

administrative hearing in which the Government or its agent is a party; in a congressional, Government Accountability Office, or other federal report, hearing, audit, or investigation; or from the news media. To the extent that there has been a public disclosure unknown to Relator, it is the "original source" within the meaning of 31 U.S.C. § 3730(e)(4)(B) and/or the public disclosure is a result of Relator voluntarily providing this information to the United States Government prior to filing this *qui tam* action.

## VII.    FIRST CAUSE OF ACTION

### FALSE OR FRAUDULENT CLAIMS (31 U.S.C. § 3729.(a)(1)(A-B))

57.    Plaintiff alleges and incorporates by reference each and every allegation contained in all prior paragraphs of this complaint.

58.    This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq*., as amended.

59.    By virtue of the acts described above, Defendants knowingly presented, or caused to be presented, to an officer or employee of the United States government, false or fraudulent claims for payment or approval, in violation of the FCA, 31 U.S.C. § 3729(a)(l)(A).

60.    By virtue of the acts described above, Defendants knowingly made or used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for payment by the Government.

COMPLAINT

61.        Because of the Defendants' acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $12,537.00 and not more than $25,076.00 for each and every violation arising from Defendants' unlawful conduct alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, *qui tam* Plaintiff/Relator prays for judgment against Defendants, as follows:

1.  That this Court enter judgment against each Defendant in an amount equal to three times the damages that the United States has sustained because of Defendants' action, plus a civil penalty of not less than $12,537.00 and not more than $25,076.00 for each and every false claim as are required by law, together with all such further relief as may be just and proper.

2.  Such other relief as this Court may deem just and proper, together with interest and costs of this action.

3.  Reasonable attorney fees, litigation expenses, and costs of suit

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 8, 2022                          THE LAW OFFICE OF HAKIMI & SHAHRIARI

COMPLAINT

By:   /s/ Anoush Hakimi

ANOUSH HAKIMI, ESQ.
Attorney for Plaintiff

COMPLAINT